IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Roy A. Tutt, #272335, ) | |
| ) | Civil Action No. 6:06-0120-CMC-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Florence Police Department, ) | |
| Dubravka Perry, Van Jackson, and ) | |
| Colonial Inn, ) | |
| ) | |
| Defendants. ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., all pretrial matters in cases filed under Title 42, United States Code, Section 1983, are referred to a United States Magistrate Judge for consideration.

This matter is before the court on the motion to dismiss of defendant Colonial Inn, the motion for summary judgment of defendants Dubravka Perry and Van Jackson, and the separate motion for summary judgment of the defendant Florence Police Department. In his complaint, the plaintiff, alleges unspecified causes of action related to his relationship with defendant Perry and his wife's relationship with defendant Jackson. Both defendants Perry and Jackson were at the time of the alleged acts employees of the defendant Florence Police Department.

The motion to dismiss by Colonial Inn was filed on March 28, 2006. By order filed on March 29, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975),

the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  The plaintiff filed a response to the motion to dismiss on June 6, 2006.

The motions for summary judgment were filed on June 19, 2006.  By orders filed on June 20, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motions.  The plaintiff filed a response to the defendants' motions on July 24, 2006.

## **FACTS PRESENTED**

The Florence Police Department arrested the plaintiff on four narcotics charges on May 26, 2005, and again on a fifth narcotics charge on May 27, 2005.  At its August 2005 term, the Florence County Grand Jury indicted the plaintiff on all five charges.  As reflected in the arrest warrants served upon him in late May 2005, the August 2005 indictment, and the sentence sheets reflecting his guilty pleas and sentences, the plaintiff committed his drug offenses on January 4, February 8, and May 26, 2005.

On September 22, 2005, the plaintiff pleaded guilty in the Court of General Sessions for Florence County to three charges:  two separate charges of distributing crack cocaine within proximity of a school and one charge of possession of crack cocaine.  The presiding circuit court judge sentenced the plaintiff to eight years imprisonment on both charges of distributing crack cocaine within proximity of a school and three years imprisonment on the single charge of possession of crack cocaine.  The presiding judge ordered that these sentences run concurrently with one another.  The plaintiff is currently incarcerated within the South Carolina Department of Corrections ["SCDC"].

In his complaint, the plaintiff did not allege that either defendant Perry, who was formerly employed as a police officer by the City of Florence Police Department, or

defendant Jackson, who has been continuously employed as a police officer by the City of Florence Police Department since June 12, 2000, had any connection to his arrests on the narcotics charges which ultimately led to his convictions and subsequent incarceration.

The plaintiff alleged that defendant Perry, with whom he had had an extramarital affair, entered premises he occupied without his permission on four separate occasions during 2004. On the first occasion described in his complaint, the plaintiff alleged that defendant Perry came through a window in his home at approximately 2:30 a.m. sometime during March 2004. On the second occasion described in his complaint, the plaintiff alleged that defendant Perry "barged" through the front door of his home again during March 2004. In describing the second occasion during which defendant Perry allegedly entered his home during March 2004, the plaintiff alleged that on this occasion defendant Perry "barged" through his front door while claiming that he "had done her wrong." The plaintiff next alleged that defendant Perry "barged" into a room he occupied as a guest at the Colonial Inn in Florence sometime during October 2004. In describing defendant Perry's conduct on this occasion, the plaintiff alleged that on this occasion defendant Perry, after "barging" into his hotel room, stated that he "was cheating on her." The plaintiff finally alleged that defendant Perry "barged" into a room he occupied as a guest at the Colonial Inn in Florence sometime during November 2004. In describing defendant Perry's conduct on this occasion, the plaintiff alleged that defendant Perry, after "barging" into his hotel room, stated that he "was doing her wrong and cheating on her" (comp. 4-5). Perry admits that after confronting the plaintiff at the Colonial Inn while in her police uniform, she found a small quantity of crack cocaine and placed the crack cocaine under a rug at the front of the plaintiff's residence with the intent of setting him up. However, she reconsidered and called the plaintiff and told him where the drugs were located. The plaintiff told her that he could not find the crack cocaine (Perry/Jackson m.s.j., ex. C, Perry aff. at 4-6).

The plaintiff alleged that defendant Jackson "had an affair with [the plaintiff's] wife Clarice Tutt" during the entirety of 2004. The plaintiff further alleged that defendant Jackson used "to harass [the plaintiff] on the street by [constantly] searching [him] down in public" while "at the same time … having an affair with [Mrs. Tutt]" and knowing that the plaintiff and Mrs. Tutt were married. Finally, the plaintiff alleged that, during 2004, defendant Jackson responded to a series of 911 calls apparently placed by the plaintiff in which the plaintiff purportedly sought assistance from authorities during disputes that erupted between him and Mrs. Tutt. The plaintiff specifically alleged that defendant Jackson consistently took Mrs. Tutt's side during these disputes (comp. 5-6).

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### *Florence Police Department*

The doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994).

The plaintiff's claims against the Florence Police Department fail because the plaintiff cannot establish the required elements of supervisory liability. In *Stroud*, the Fourth Circuit Court of Appeals analyzed what a plaintiff must show to meet the elements:

> To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. *Slakan*, 737 F.2d at 373. Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. *Id.* at 373-74.
>
> A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." *Id.* at 373. *See Miltier*, 896 F.2d at 848; *Withers*, 615 F.2d at 158; *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977). The plaintiff assumes a heavy burden of proof in establishing deliberate indifference because:
>
>> [o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated

6

> incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.
>
> *Slakan*, 737 F.2d at 372-73 (quoting *Orpiano*, 632 F.2d at 1101 (citations omitted)). *See Lopez v. Robinson*, 914 F.2d 486 (4th Cir.1990).
>
> Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff. *Slakan*, 737 F.2d at 376; *see Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). This concept encompasses cause in fact and proximate cause. In *Slakan*, we noted that the "proof of causation may be direct ⋯ where the policy commands the injury of which the plaintiff complains ⋯ [or] may be supplied by [the] tort principle that holds a person liable for the natural consequences of his actions." *Slakan*, 737 F.2d at 376 (quoting *Wellington*, 717 F.2d at 936).

*Id.*

There is no evidence that the police department had any prior knowledge of the alleged violations asserted by the plaintiff or that the plaintiff was at risk of harm for these allegations.  As for the second element, the plaintiff contends that he made a complaint to the Chief of the City of Florence Police Department regarding Perry's conduct. In response, the City contacted SLED to investigate the plaintiff's complaints (comp. 9-10). As a result of the SLED investigation, defendant Perry was charged with Misconduct in Office, to which she later pleaded guilty, and the Florence Police Department terminated her employment.  There is no evidence that the police department acquiesced to or tolerated the alleged wrongful conduct.  Indeed, the evidence shows that once informed of the plaintiff's allegations, an investigation by an independent law enforcement agency was

initiated, and defendant Perry was prosecuted for her misconduct. Further, the plaintiff has not shown any constitutional injury suffered as a result of the inaction of any supervisor. Based upon the foregoing, the defendant Florence Police Department's motion should be granted.

### *Perry and Jackson*

The plaintiff has also alleged claims under Section 1983 against individual defendants Perry and Jackson. In order to establish that either of these defendants violated Section 1983, the plaintiff must first establish that they each acted under color of state law in conducting themselves in the manner described in the complaint. *Bailey v. Prince George's County*, 34 F. Supp.2d 1025, 1026 (D. Md. 1999) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) and *S.P. v. City of Takoma Park*, 134 F.3d 260, 269 (4th Cir. 1998)). He must then establish that the conduct of these defendants deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Id.* at 1027.

In *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870 (4th Cir. 1989), the Fourth Circuit Court of Appeals stated:

> While it certainly is true that "[a]cts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983," the lack of the outward indicia suggestive of state authority - such as being on duty, wearing a uniform, or driving a patrol car - are not alone determinative of whether a police officer is acting under color of state law. Rather, the nature of the act performed is controlling. The act therefore must be carefully scrutinized to determine whether an officer, when either on or off duty, is acting under color of state law. .

*Id.* at 872-73 (internal citations omitted).

In a case similar to this one, *Bailey,* 34 F.Supp.2d 1025, the court found that the conduct of a police lieutenant (Brock) toward a police department civilian employee was

8

a personal interaction and did not constitute action taken under state law. The court reasoned as follows:

> Bailey cites *Revene* to suggest that Brock's actions could be construed a misuse of power, constituting actions taken under color of state law. In *Revene,* plaintiff alleged that an off-duty, out-of-uniform Charles County police officer operating his own vehicle had followed plaintiff's decedent to his home and shot and killed him without provocation. The Fourth Circuit held that such actions could be "viewed as consistent with an officer's misuse of power ⋯ possessed by virtue of state law," thus falling within the purview of § 1983. *Revene*, 882 F.2d at 874. Bailey invites the Court's attention to the fact that in the present case, the police officer (Brock) was on-duty, in uniform, in the office, and armed with a County-issued gun. The suggestion is that if the deputy sheriff in *Revene* could be held to be acting under color of state law when he was off-duty, out-of-uniform, and away from his station, then where the opposite of those indicia obtain, as in the present case, action under color of state law must necessarily be present.
>
> This logic is flawed and neglects the more critical language of *Revene* which is that "the nature of the act performed is controlling." 882 F.2d at 872. An officer can be on-duty, in uniform, in the station house itself and still not be acting under color of state law. *See, e.g., Stengel v. Belcher*, 522 F.2d at 441 (whether police officer is "in or out of uniform is not controlling"); *Pitchell v. Callan*, 13 F.3d 545, 548 (2d. Cir.1994) (whether police officer was on or off duty when the challenged incident occurred is not dispositive); *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir.1981) (police chief's assault on private citizen, though occurring at police headquarters, is not conduct under color of state law). *Delcambre* offers parallels to the present case. There the chief of police assaulted his sister-in-law on the premises of a municipal police station. The sister-in-law was not arrested nor was she threatened with arrest. Affirming the district court's grant of summary judgment, the Fifth Circuit held that "the altercation arose out of an argument over family and political matters," 635 F.2d at 408, and found no act under color of law as required for § 1983 liability.
>
> The only reasonable conclusion in the case at hand is that Brock was also engaged in a personal interaction. She was not performing a police function nor could she reasonably be believed to be. Instead, she was engaged in an office quarrel with a co-worker she thought had treated her rudely. Taking

> Bailey's version of the facts to be true, the most that can be said is that Brock, in a fit of pique, overreacted badly. But she did not arrest or threaten to arrest or even lay a hand on Bailey. She momentarily blocked a doorway and placed her hand on her gun. A conventional tort may or may not have occurred, but nothing approaching the violation of a constitutional right took place.

*Id.* at 1027-28.

It does not appear that either defendant Perry or defendant Jackson were acting under color of state law at the time of the conduct described in the complaint. The facts as alleged by the plaintiff show that defendant Perry, who was at that time a police officer with the City of Florence Police Department, was pursuing an extramarital relationship with the plaintiff. Further, defendant Jackson, also an officer with the police department, was pursuing an extramarital relationship with the plaintiff's wife. It appears from the facts asserted by the plaintiff that any alleged harassment of the plaintiff by these defendants arose within the context of the extramarital affairs between the plaintiff and Perry and the plaintiff's wife and Jackson and are purely private conduct. Here, as in *Bailey,* 34 F.Supp.2d at 1027-28, these defendants were engaged in personal interactions.

Even assuming that these defendants were acting under color of state law, the claims fail because the plaintiff has not and cannot show that the defendants deprived him of any rights secured by the Constitution. As argued by the defendants, the plaintiff's allegations against defendant Jackson "animate the common law torts of assault, battery, intentional infliction of emotional distress, and, perhaps most applicable to the [p]laintiff's claims, the extinct common law torts of criminal conversation and alienation of affections" (Perry/Jackson m.s.j. 14). Further, "[a]t best, the [p]laintiff's allegations against defendant Perry amount to allegations animating the common law torts of trespass and intentional infliction of emotional distress, or, perhaps most applicable to the plaintiff's claims, the extinct common law tort of alienation of affections. However, [section] 1983 provides no remedy for these torts" (Perry/Jackson m.s.j. 11). No action by either defendant resulted

in the plaintiff's arrest for the narcotics charges to which he eventually pleaded guilty and for which he was sentenced to eight years confinement. Based upon the foregoing, the motion for summary judgment of defendants Perry and Jackson should be granted.

*Colonial Inn*

In his complaint, the plaintiff alleged that defendant Colonial Inn wrongfully gave defendant Perry information as to his whereabouts while he was a guest at the hotel in October and November 2004 (comp. 5). The plaintiff has shown no evidence that defendant Colonial Inn acted under color of state law in depriving him of rights, privileges, or immunities secured by the Constitution or laws of the United States so as to bring a cause of action against this defendant under Section 1983.

*State Law Claims*

To the extent the plaintiff has alleged state law claims against the defendants, the court should decline to exercise supplemental jurisdiction over any such claims as it is recommended that summary judgment be granted on the federal claims. *See* 28 U.S.C. §1367(c).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motions to dismiss and for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

October 5, 2006

Greenville, South Carolina